# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Chou T.,

        Petitioner,

v.

Kristi Noem, *Secretary, Department of Homeland Security*; Todd M. Lyons, *Acting Director, Immigration and Customs Enforcement*; and David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement,*

        Respondents.

Case No. 26-cv-01432 (SHL/ECW)

**ORDER**

---

This matter is before the Court on Petitioner Chou T.'s[1] Petition for Writ of Habeas Corpus ("Petition") (Dkt. 1). This case has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the following reasons, this Court recommends that the Petition for Writ of Habeas Corpus (Dkt. 1) be granted.

## I.    BACKGROUND

Petitioner alleges, and Respondents do not dispute, the following facts. Petitioner belongs to the Hmong ethic minority of Laos. (Dkt. 1 at 1.) Petitioner was born in a refugee camp in Thailand and entered the United States as a refugee in 1980, when he

---

[1]    This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders and report and recommendations in immigration matters.

was 13 months old.  (*Id.*)  Petitioner later became a lawful permanent resident, retroactive to the date of his entry.  (*Id.*)

In 2003, Petitioner pled guilty to criminal sexual conduct.  (*Id.* at 9 (citing *State v. Thao*, No. 62-K4-03-000470 (Minn. Dist. Ct. Apr. 9, 2003)).)  Petitioner served over seven years in prison for this crime and was released in 2013.  (*Id.*)  Petitioner has remained law abiding since his release from prison.  (*Id.* at 10.)  Petitioner completed his parole and was discharged in 2019.  (*Id.* at 9.)

An Immigration Judge ordered Petitioner removed in 2005.  (*Id.*)  However, the government was unable to remove him to Laos, which rarely accepts Hmong deportees.  (*Id.* 1-2, 9.)  Petitioner was subsequently released on an order of supervision, with which he has fully complied.  (*Id.* at 2, 9.)  Petitioner has completed all required check-ins with ICE and has applied for a work permit every year.  (*Id.* at 10.)

On December 16, 2025,[2] ICE arrested Petitioner at his workplace.  (*Id.* at 2.)  Three ICE agents approached Petitioner after he parked his truck and scanned his face with a phone.  (*Id.*)  Petitioner stated that he could not be arrested without a warrant, but the agents responded that they did not need a warrant to arrest him.  (*Id.* at 2.)  Petitioner

---

[2]    At one point in the Response, Respondents assert that Petitioner has only been in ICE custody since February 12, 2026.  (Dkt. 5 at 1.)  This appears to be an error, since Respondents assert later in the Response that Petitioner was detained "on or about December 17, 2025" and for "about two months."  (*Id.* at 1, 4.)  The Exhibit attached to the Declaration of Friedrich A. P. Siekert shows that Petitioner was detained at least as of December 17, 2025 (*see* Dkt. 6-1), and the Declaration of Geneva A. Balencia states that Petitioner was "encountered by ICE-ERO during Operation Metro Surge in St. Paul, MN and subsequently arrested" on December 16, 2025 (Dkt. 8 ¶ 16).  The Court uses December 16, 2025 as the Petitioner's arrest and detention for purposes of this Report and Recommendation.  (*See* Dkt. 6-1.)

was never presented with a warrant for his arrest. (*Id.*) Petitioner is currently detained at the Freeborn County Jail in Albert Lea, Minnesota. (*Id.* at 4.)

Respondents filed an "Alien Informal Interview" summary authored by ICE Officer Andrew Rott, stating that he interviewed Petitioner pursuant to 8 C. F. R. § 241.13(i) on December 17, 2025. (Dkt. 6-1 at 2-3.) Respondents also filed a Notice of Revocation of Release dated December 17, 2025, signed by Acting Deputy Field Office Director Michael P. Bottjet, along with a Proof of Service signed by Officer Rott certifying that he served the Notice on Petitioner on December 17, 2025. (*Id.* at 3-4.) The Notice states that the "decision" to keep Petitioner in ICE custody:

> has been made based on a review of your file and/or your personal interview on account of changed circumstances in your case. ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case. . . . Since being released, removal from the U.S. is now significantly likely in the reasonably foreseeable future. Based on changed circumstances in your case you will be brought back into ICE custody.

(*Id.* at 4.) The Notice does not provide any description of the "changed circumstances." (*Id.*)

Petitioner filed the Petition for a Writ of Habeas Corpus on February 13, 2026. (Dkt. 1.) Later that day, United States District Judge Stephen H. Locher issued an Order requiring Respondents to answer the Petition by no later than February 17, 2026. (Dkt. 3 at 1.) The Order required Respondents' answer to include, among other things, "[s]uch affidavits and exhibits as are needed to establish the lawfulness and correct duration of Petitioner's detention in light of the issues raised in the habeas petition," and "[w]hether Petitioner was arrested pursuant to a warrant and, if so, a copy of such warrant." (*Id.*)

3

The Order also enjoined Respondents from removing Petitioner from the District of Minnesota until further order of the Court. (*Id.* at 1-2.) Petitioner was permitted to file a reply to Respondent's answer by no later than February 19, 2026. (*Id.* at 1.)

Respondents filed their answer a day late, on February 18, 2026, without any explanation for the untimely filing. (*See* Dkt. 5.) The Response also referred to a Declaration of Geneva A. Balencia and travel documents, however, no such declaration or travel documents were filed with the Court. (*Id.* at 2, 4.) So the Petition could be decided on the merits, the Court ordered Respondents to file the declaration and travel documents, along with a declaration explaining the late filing. (Dkt. 7.) Respondents filed these documents on February 18, 2026. (Dkts. 8-10.) Respondents' counsel explained the late filing and missing documents as follows:

> By email dated February 17, 2026 and timed at 11:33 p.m. cst, I emailed the documents to be filed in opposition to the habeas petition to our support staff with instructions to file before midnight if possible or early Wednesday morning. Unfortunately, by the time the email reached our support staff, they had repaired for the night. I do not know how to file documents through CMECF.
>
> Our support staff dutifully filed the documents beginning at 8:01 a.m. on February 18, 2026. That morning, I noticed the filings had occurred while going through my morning emails, but I did not appreciate that the Declaration of Genevie [sic] A. Belencia [sic] was not among the documents filed. Upon receipt of the Court's order, ECF No. 7, I became aware the Balencia Declaration had not been filed. I reviewed my emails and determined that I inadvertently had not included the Balencia [sic] Declaration in my email to support staff at 11:33 p.m. on February 17, 2026. (I included two versions of the Siekert Declaration instead.)

(Dkt. 10 at 1-2.)

4

Petitioner filed his reply on February 19, 2026.  (Dkt. 11.)  Petitioner argues that the Court should decline to accept the late filed response because Respondents have failed to show good cause for their lateness.  (Dkt. 10 at 2-5.)  In the alternative, Petitioner argues that the Court should grant the Petition on the merits.  (*Id.* at 5-10.)

For the reasons discussed below, the Court recommends that the Petition be granted on the merits.  However, the Court cautions Respondents that future late filings may not be accepted in the absence of good cause shown.

## II.     LEGAL STANDARD

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Dkt. 1 at 5.)  Under this provision, a writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States.  28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States") (citing U.S. Const., Art. I, § 9, cl. 2)).  The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus extends to immigration-related detention after a detention order becomes final.  *Faysal N. v. Noem*, No. 25-CV-04641 (JMB/DLM), 2026 WL 36066, at *2 (D. Minn. Jan. 6, 2026).

The Court has jurisdiction to hear this Petition, which does not challenge the removal order but instead challenges the revocation of Petitioner's supervised release and the lawfulness of his re-detention.  *See Garrison G. v. Bondi*, No. 26-CV-172 (JMB/DJF), 2026 WL 157677, at *2 (D. Minn. Jan. 17, 2026) ("Because Garrison G.

does not challenge the removal order but instead challenges the revocation of his supervised release and his continued detention, the Court has jurisdiction to decide the questions raised about the lawfulness of his current re-detention."); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

### III.   DISCUSSION

Petitioner seeks relief on several grounds, including Respondents' alleged violation of the Immigration and Nationality Act and 8 C.F.R. § 241.013(i)(2)-(3) (Dkt. 1 ¶¶ 48-51, 65-67), violation of the Fifth Amendment on substantive and procedural grounds (*id.* ¶¶ 52-60), and violation of the Fourth Amendment (*id.* ¶¶ 61-64).  Because the Court finds ICE has violated 8 C.F.R. § 241.013 in re-detaining Petitioner, it does not reach the alternative grounds.  *See Faysal N.*, 2026 WL 36066, at *3 n.3 ("Faysal N. also asserts that his re-detention violated the Administrative Procedure Act and the due process clause of the Fifth Amendment.  Because the Court finds that ICE has violated its own regulations in re-detaining Faysal N., such that his current detention is unlawful, the Court does not reach these alternative arguments." (citation omitted)).

As to his regulatory challenge, Petitioner argues ICE did not comply with the requirements of 8 C.F.R. § 241.13, which governs the revocation of an order for supervised release.  (*See* Dkt. 1 at 17.)  This regulation provides, in relevant part, that ICE "may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant

6

likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).  This regulation also sets forth factors to consider in determining whether removal is significantly likely in the reasonably foreseeable future, including: the noncitizen's efforts to comply with the removal order; the history of ICE's efforts to remove individuals to the destination country or to third countries; the ongoing nature of ICE's efforts to remove the particular noncitizen and his assistance with those efforts; the reasonably foreseeable results of those efforts; and the views of the Department of State regarding the prospects for removal to the countries in question.  8 C.F.R. § 241.13(f). The regulation further provides that:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).

In general, a habeas petitioner bears the burden of showing that their detention violates the law.  *See Copenhaver v. Bennett*, 355 F.2d 417, 422 (8th Cir. 1966). However, courts in this jurisdiction have concluded that 8 C.F.R. § 241.13(i)(2) places the burden on the government to establish that changed circumstances justify a non-citizen's re-detention.  *E.g.*, *Garrison G. v. Bondi.*, 2026 WL 157677, at *3; *Yee S. v. Bondi*, 806 F. Supp. 3d 894, 900 (D. Minn. 2025); *Roble v. Bondi*, 803 F. Supp. 3d 766,

7

772 (D. Minn. 2025).  As this Court previously found in *Ban S. v. Bondi*, No. 25-CV-4750 (PJS/ECW) (D. Minn. Jan. 17, 2026), *R. & R. adopted*, 25-CV-4750 (PJS/ECW) (D. Minn. Jan. 26, 2026)), the reasoning in those cases is persuasive, and the Court therefore finds that 8 C.F.R. § 241.13(i)(2) requires ICE to show changed circumstances that justify revocation of supervised release.  As one court has explained, this requirement is consistent with the default rule that the burden falls on the party who "generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion."  *See Roble*, 803 F. Supp. 3d at 772 (quoting *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (quoting McCormick on Evidence § 337 (5th ed. 1999))).  As it is the government who seeks to change the state of affairs by re-detaining Petitioner, it is the government who bear the burden to establish the changed circumstances that justify re-detention.  *See id.*

Several courts in this District have concluded that the government does not meet its burden when it makes conclusory assertions of likelihood of removal.  *E.g.*, *Ban S.*, No. 25-CV-4750, Dkt. 8 at *7 (concluding that the government had not met its burden where "the only evidence of changed circumstances offered by Respondents is Robinson's statement that 'ICE Headquarters and Removal Operations is actively working with the Department of State and the Department of Homeland Security on removal logistics for Petitioner[']")  (citation modified); *Roble*, 803 F. Supp. 3d at 773 (concluding that the government did not meet its burden when it "provided 'scant information' about what 'assistance' it has requested from ICE headquarters for a third

country removal, and it has provided no information about the anticipated outcome of requesting that assistance.").

Here, Respondents have identified no changed circumstances that existed at the time of Petitioner's detention. Accordingly, the Court concludes that Petitioner's detention was unlawful. The Court has also considered the evidence of changed circumstances that Respondents requested and obtained **after** they detained Petitioner and conclude that this evidence does not satisfy Respondent's burden to justify Petitioner's re-detention. Respondents requested a travel document for Petitioner on December 19, 2025 (three days after his detention and two days after he was served with the Notice) and obtained a travel document for Petitioner on February 2, 2026,[3] six weeks after they detained Petitioner on December 16, 2025. (Dkt. 8 ¶¶ 18-19.) Based on the record, no changed circumstances prompted Petitioner's detention on December 16, 2026. Moreover, it does not appear that Respondents have taken any steps to schedule Petitioner's removal, as they did not describe any such steps in their February 18, 2026 Response and supporting documents. The Court agrees with the other courts in this District that have concluded that the existence of a travel document alone does not necessarily justify re-detention. *See Vang v. Bondi*, No. 26-CV-1381 (JMG/DLM), at *5 (D. Minn. Feb. 18, 2026) (ordering release where Respondents obtained a travel document after detaining Petitioner); *Yeng X. v. Noem*, No. 26-CV-1399 (JMG/ECW), at

---

[3]    The Balencia Declaration states that the travel document was received on February 2, **2025**. (Dkt. 8 ¶ 19 (emphasis added).) This appears to be an error as to the year, given that the travel document was not requested until December 19, 2025. (*Id.* ¶ 18.)

*2-3 (D. Minn. Feb. 18, 2026) (same).  Respondents have not alleged that the absence of a travel document was the sole barrier that prevented Petitioner's removal prior to his Order of Supervised Release, and the Court cannot reach that conclusion on the record now before it.

While the Court does not address every possible basis for relief, the Court also notes that Respondents have also failed to comply with 8 C.F.R. § 241.13(i)(3), which requires that:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).  The Notice and interview provided to Petitioner in this case were deficient because they did not identify the changed circumstances that supported the revocation of his release.  *See Faysal*, 2026 WL 36066, at *4 (finding notice deficient where "[t]he Notice of Revocation of Release does not identify any 'changed circumstances' or provide any explanation to support the conclusion that [the petitioner] is significantly likely to be removed in the reasonably foreseeable future.  In this notice, ICE claims summarily that the agency had made a 'determination that there are changed circumstances in your case,' but it includes no factual statements or explanation.").  Indeed, the record is clear that Respondents had not even requested a travel document

10

when they served Petitioner with the Notice and interviewed him on December 17, 2025. (*See* Dkt. 8 ¶¶ 16-18.)

Courts in this District have ordered release when ICE violated its own regulations regarding notice and an opportunity to respond even where it was possible that a petitioner could be re-detained after the government complied with 8 C.F.R. § 241.13(i)(3). *See Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 781-85 (D. Minn. 2025) (overruling objections to recommendation for release because ICE did not comply with 8 C.F.R. § 241.13(i)(3); Respondents also failed to show removal was significantly likely in the reasonably foreseeable future); *see also Roble*, 803 F. Supp. 3d at 771-72 ("Because ICE violated its own regulations when it detained Roble without notifying him of the reasons why he was being detained, Roble is entitled to habeas relief.") (ordering release due to ICE's failure to comply with 8 C.F.R. § 241.13(i)(3); also ordering release because Respondents also failed to show removal was significantly likely in the reasonably foreseeable future.)  Under § 241.13, "it is the government's burden to show a change in circumstance *before* revoking an order of supervision and detaining a person indefinitely."  *Vang*, No. 26-CV-1381 (JMG/DLM), at *5.  As one District Judge put it, "The government detained the petitioner first, and asked questions later.  That's not how this works."  *Id.* at 4.  The Court likewise concludes that Respondents' failure to comply with 8 C.F.R. § 241.13(i)(3) in this case is a basis for habeas relief, namely, release.

In view of the Court's finding that Respondents have unlawfully detained Petitioner since December 16, 2025, the Court sets an expedited deadline for objections to this Report and Recommendation.  *See* D. Minn. LR 72.2(a)(1) ("A party may file and

serve objections to the order within 14 days after being served with a copy, **unless the court sets a different deadline**.") (emphasis added)).  Any objections to this Report and Recommendation are due **February 23, 2026**.  Responses to objections are due **February 26, 2026**.

## IV.    RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1. The Verified Petition for Writ of Habeas Corpus of Petitioner Chou T. (Dkt. 1) be **GRANTED** such that:

   a. If Petitioner is being detained outside of Minnesota, Respondents be ordered to transport Petitioner to Minnesota and release Petitioner from custody immediately, where Petitioner's release in Minnesota must occur no later than 48 hours after the filing of an Order adopting this Report and Recommendation.

   b. If Petitioner is being detained in Minnesota, Respondents be ordered to release Petitioner from custody as soon as practicable, and no later than 48 hours from the filing of an Order adopting this Report and Recommendation.

   c. Given the weather conditions in Minnesota, Respondents be ordered to coordinate with Petitioner's counsel to ensure that upon Petitioner's release, they are not left outside in dangerous cold.  It is preferable to release Petitioner to counsel to ensure humane treatment.

   d. Respondents be ordered to release Petitioner with all personal effects, including his driver's license, passports, or immigration documents, where such documents are not clipped, defaced, or otherwise altered.

   e. Respondents be enjoined from imposing any conditions on Petitioner's release other than the conditions in his preexisting Order of Supervision.

f.  Respondents be enjoined from re-detaining Petitioner unless and until they comply with all requirements of 8 C.F.R. § 241.13(i)(3). If, after releasing Petitioner, Respondents believe that they are prepared to comply with 8 C.F.R. § 241.13(i)(3), they be required contact Petitioner's counsel to schedule the required interview and Petitioner be required to attend the scheduled interview.

g.  If Respondents re-detain Petitioner after completing the required process, Respondents be required to file an update with the Court within 24 hours of re-detention. While this update need not include the exact date and time of Petitioner's removal flight, it must identify the approximate time of Petitioner's removal.

2.  Petitioner Chou T. be permitted to move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

Dated: February 20, 2026

*s/Elizabeth Cowan Wright*
Elizabeth Cowan Wright
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. **The Court modifies this deadline such that objections are due on or before February 23, 2026.** *See* D. Minn. LR 72.2(a)(1) ("A party may file and serve objections to the order within 14 days after being served with a copy, unless the court sets a different deadline."). **Responses to objections are due on or before February 26, 2026.** All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

13